**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Susan Dardarian *et al*.,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. Department of Defense *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-1965-CRC |

**DEFENDANTS' COMBINED BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................ 1

BACKGROUND ........................................................................ 2

LEGAL STANDARD ........................................................................ 4

ARGUMENT ........................................................................ 5

I. Plaintiffs Lack Article III Standing ........................................................................ 5

A. Plaintiffs do not have standing to challenge alleged censorship of third parties ........................................................................ 5

B. Plaintiffs do not have standing based on “economic harm” ........................................................................ 7

II. Plaintiffs’ Substantive Challenges Fail ........................................................................ 9

A. The rules governing Stripes are “committed to agency discretion by law” ........... 9

B. DoW’s actions were not arbitrary or capricious ........................................................................ 10

C. DoWI 5122.11 does not violate the First Amendment ........................................................................ 15

III. Plaintiffs’ Notice-And-Comment Claims Fail ........................................................................ 18

IV. Any Relief Should be Limited to Remand to the Department (and not Vacatur) ................. 21

CONCLUSION ........................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Air Transport Ass'n of Am. v. Dept. of Transp.*,
900 F.2d 369 (D.C. Cir. 1990) .......... 20

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
988 F.2d 146 (D.C. Cir. 1993) .......... 22

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .......... 6

*Aulenback, Inc. v. Fed. Highway Admin.*,
103 F.3d 156 (D.C. Cir. 1997) .......... 18

*Austin-Spearman v. AARP & AARP Servs. Inc.*,
119 F. Supp. 3d 1 (D.D.C. 2015) .......... 8

*Barhoumi v. Obama*,
234 F. Supp. 3d 84 (D.D.C. 2017) .......... 8

*Batterton v. Marshall*,
648 F.2d 694 (D.C. Cir. 1980) .......... 19

*Brodowy v. United States*,
482 F.3d 1370 (Fed. Cir. 2007) .......... 21

*Chamber of Commerce of U.S. v. DOL*,
174 F.3d 206 (D.C. Cir. 1999) .......... 18, 19

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) .......... 4, 5, 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 8

*Claybrook v. Slater*,
111 F.3d 904 (D.C. Cir. 1997) .......... 8

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) .......... 11

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) .......... 11

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) .......... 5

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ..... 5

*FDA v. Wages & White Lion Invs., L.L.C.*,
604 U.S. 542 (2025) ..... 11

*Friends of Animals v. Bernhardt*,
961 F.3d 1197 (D.C. Cir. 2020) ..... 20, 21

*Heckler v. Chaney*,
470 U.S. 821 (1985) ..... 9

*Elec. Priv. Info. Ctr. v. DHS*,
653 F.3d 1 (D.C. Cir. 2011) ..... 18, 19, 20

*Florida Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ..... 14

*Harmon v. Thornburgh*,
878 F.2d 484 (D.C. Cir. 1989) ..... 21

*Int'l Swaps & Derivatives Ass'n v. CFTC*,
887 F. Supp. 2d 259 (D.D.C. 2012) ..... 4

*JEM Broadcasting Co., Inc. v. FCC*,
22 F.3d 320 (D.C. Cir. 1994) ..... 20

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ..... 6, 7

*Lamont v. Postmaster General*,
381 U.S. 301 (1965) ..... 7

*League of Women Voters v. DHS*,
835 F. Supp. 3d 79 (D.D.C. 2026) ..... 4

*Libertarian Nat'l Comm., Inc. v. FEC*,
924 F.3d 533 (D.C. Cir. 2019) ..... 6

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ..... 10, 18, 19, 20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..... 5, 8

*Martin v. EPA*,
271 F. Supp. 2d 38 (D.D.C. 2002) ..... 5

*McLarnon v. United States*,
154 Fed. Cl. 459 (2021) ........ 8

*Med. Imaging & Tech. All. v. Libr. of Cong.*,
103 F.4th 830 (D.C. Cir. 2024) ........ 21

*Mingo Logan Coal Co. v. EPA*,
829 F.3d 710 (D.C. Cir. 2016) ........ 14

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 5

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........ 1, 6

*Nat'l Mining Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) ........ 18

*Nebraska, Dept. of Health & Human Servs. v. HHS*,
340 F. Supp. 2d 1 (D.D.C. 2004) ........ 13, 14

*Perez v. Mortgage Bankers Ass'n*,
575 U.S. 92 (2015) ........ 18, 21

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) ........ 15, 16

*Pub. Citizen v. Dept. of State*,
276 F.3d 634 (D.C. Cir. 2002) ........ 18, 20

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) ........ 17

*Richardson v. Morris*,
409 U.S. 464 (1973) ........ 8

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*,
515 U.S. 819 (1995) ........ 17

*Shurtleff v. City of Boston*,
596 U.S. 243 (2022) ........ 16

*Slavin v. Parnell*,
No. 1:26-cv-03009 (TNM), 2026 WL 2620990 (D.D.C. Sept. 4, 2026) ........ 15

*Solenex LLC v. Bernhardt*,
962 F.3d 520 (D.C. Cir. 2020) ........ 15

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
985 F.3d 1032 (D.C. Cir. 2021) ..... 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 5

*Tripp v. DoD*,
284 F. Supp. 2d 50 (D.D.C. 2003) ..... 16

*United States v. Texas*,
599 U.S. 670 (2023) ..... 22

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) ..... 6

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
576 U.S. 200 (2015) ..... 15, 16

*Williston Basin Interstate Pipeline Co. v. FERC*,
519 F.3d 497 (D.C. Cir. 2008) ..... 22

**U.S. Constitution**

U.S. Const. art. III, § 2, cl. 1 ..... 5

**Statutes**

5 U.S.C. § 301 ..... 9

5 U.S.C. § 553(a) ..... 21

5 U.S.C. § 553(b) ..... 18, 19

5 U.S.C. § 701(a)(2) ..... 1, 9

5 U.S.C. § 703 ..... 22

5 U.S.C. § 706(2) ..... 4

10 U.S.C. § 136(b) ..... 9

28 U.S.C. § 1346 ..... 8

28 U.S.C. § 1491 ..... 8

**Administrative & Executive Materials**

32 C.F.R. § 246.1 ..... 19

32 C.F.R. § 246.3 .......... 20

32 C.F.R. § 246.4 .......... 20

32 C.F.R. § 246.5 .......... 20

Magnuson-Stevens Fishery Conservation and Management Act Provisions; Fisheries of the Northeastern United States; Northeast Multispecies Fishery, 91 Fed. Reg. 39,529 (June 30, 2026). .......... 20

Stars and Stripes Media Organization ("Rule Removal"), 91 Fed. Reg. 1706 (Jan. 15, 2026) .......... *passim*

Stars and Stripes (S&S) Newspaper and Business Operations, 59 Fed. Reg. 19,137 (Apr. 22, 1994). .......... 2

**Legislative Materials**

92 Cong. Rec. 2159 (1946) .......... 22

Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess. 36-37 (1946) .......... 22

S. Rep. No. 752, 79th Cong., 1st Sess. 44 (1945) .......... 22

**Other Authorities**

Department of War Instruction 5122.11, Stars and Stripes Media Organization, esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/512211p.PDF .......... *passim*

Stars and Stripes, Digital Access Terms of Sale, https://www.stripes.com/help/digital-access-terms-of-sale/ .......... 8

## INTRODUCTION

The Department of War ("DoW") funds and operates Stars and Stripes ("Stripes") as "an independent source of news and information" intended to "bolster morale, readiness, and awareness of military-relevant issues." *See* Department of War Instruction (DoWI) 5122.11 at 1, *Stars and Stripes Media Organization*, esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/512211p.PDF; AR0180. Through this lawsuit, Plaintiffs—four subscribers to the publication—seek to dictate the terms on which DoW runs its own news publication. They urge the Court to set aside recent policy changes regarding Stripes' governance, alleging that those changes are arbitrary and capricious, violate the First Amendment, and were promulgated without notice and comment. The Court should reject Plaintiffs' claims and award summary judgment to Defendants.

*First*, Plaintiffs lack Article III standing to bring this suit as they suffer no concrete individualized harm. Plaintiffs' "right to listen" theory, alleging a First Amendment injury because they must access content from wire services or other news organizations at their source rather than as reprints from Stripes, is "startlingly broad" and such an expansive theory of standing has been rejected by the Supreme Court. *See Murthy v. Missouri*, 603 U.S. 43, 75 (2024). Plaintiffs' pocketbook theory of standing is also without merit. Plaintiffs' subscription to Stripes does not entitle them to prevent changes in the Stripes product, and Plaintiffs cannot spend their way into standing by purchasing subscriptions to other publications.

*Second*, Plaintiffs cannot challenge the policy changes to Stripes as arbitrary and capricious because those changes are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). No statute directly creates Stripes or provides for its organization and governance. These matters are instead committed to the discretion of DoW. With no meaningful standard against which to judge DoW's exercise of its discretion over Stripes, Plaintiffs cannot succeed in a challenge on arbitrary and capricious grounds.

*Third*, even if this Court could review those claims, Plaintiffs' arbitrary-and-capricious challenges fail. DoW gave an adequate and reasonable explanation for its policy changes, and Plaintiffs' disagreement does not make those changes irrational. Plaintiffs also fault DoW for failing to consider reliance interests, but the record contains no evidence of reliance. Thus, even if the Court were to find a standard against which to judge DoW's exercise of its discretion over Stripes, Plaintiffs' arguments on arbitrary and capricious grounds still fail.

*Fourth*, DoW's policy changes do not violate the First Amendment. Because Stripes is the government's own publication, it is government speech which DoW may control without violating the First Amendment. Even if Stripes were private speech, DoW's Stripes policy is neither content-based nor viewpoint-based discrimination. Instead, Stripes' content involves government speech, which does not deprive the government, as a constitutional matter, from authority over said speech.

And *fifth*, Plaintiffs' notice-and-comment claims fail because the policy changes were effectuated by procedural rules and general statements of policy, not legislative rules subject to notice-and-comment. While ordinarily a legislative rule subject to notice-and-comment can only be modified or repealed through notice-and-comment, Supreme Court precedent establishes that for procedural rules and general statements of policy (which do not require notice-and-comment to promulgate initially), notice-and-comment procedure is not required for their modification or repeal.

## BACKGROUND

On October 5, 1993, DoW adopted Department of Defense Directive 5122.11 to govern "Stars and Stripes (S&S) Newspapers and Business Operations." *See* Department of Defense Directive ("DoDD") 5122.11; AR0005-31. It later codified the policy, in essentially identical form, in the Code of Federal Regulations. 59 Fed. Reg. 19,137 (Apr. 22, 1994); 32 C.F.R. Part 246; AR0032-40.

On January 15, 2026, DoW issued a final rule removing the policy from the Code of Regulations "because it addresses internal policy, responsibilities, and procedures for Stripes." *Stars and Stripes Media Organization*, 91 Fed. Reg. 1706, 1706 (Jan. 15, 2026); AR0167-68 ("Rule Removal"). For the same reason, DoW did not employ notice-and-comment procedures in adopting the Rule Removal. *Id.* ("It has been determined that publication of this rule removal for public comment is unnecessary because the underlying rule addresses internal agency policies and procedures and its removal has no impact on the public.").

Less than two months later, DoW announced plans to update DoDD 5122.11 and established an interim replacement policy. ECF No. 1-1, AR0172-79 ("Modernization Memo").[1] The Department finalized its updated policy on August 21, 2026, through DoWI 5122.11. AR0180-96. That revised policy maintains Stripes as "an independent source of news and information," intended to "bolster morale, readiness, and awareness of military-relevant issues while facilitating the exercise of citizenship rights." DoWI 5122.11 at 1; AR0180. To that end, the policy declares that Stripes will "publish accurate, fair, impartial, and credible news and information," while "prioritz[ing] content not readily available via commercial news media." *Id.* § 1.2.b.; AR0182. It will also "maintain editorial operations independent of the military chain of command, military public affairs activities, or other external influences, free from censorship or propaganda," subject only to the limitation that "Stripes must safeguard information by preventing the disclosure of classified information and controlled unclassified information, and by avoiding the publication of material that would adversely affect national security or clearly endanger U.S. personnel . . . ." *Id.* § 1.2.c.; AR0182.

[1] Since the Modernization Memo is not final agency action and in any case was incorporated into and canceled by the final policy in DoWI 5122.11, Defendants focus their arguments (which would apply with equal force to the Modernization Memo) on DoWI 5122.11 only.

DoWI 5122.11 also revamps Stripes' operations. The revised policy envisions Stripes as providing "a 'hometown-style' publication for the U.S. military community" that focuses "on content relevant to the U.S. military community" through publication of "objective original news stories developed through first-hand reporting by Stripes staff" in easily accessible "print and digital formats." *Id.* § 3.1.a.(1) and (2); AR0186. The new policy prohibits Stripes "from purchasing or contracting for news stories, features, syndicated columns, and editorial cartoons from commercial news media services or sources." *Id.* § 3.1.a.(2)(c); AR0186. The prohibition does not apply to "[s]yndicated comic stripes (excluding editorial cartoons.)". *Id.* § 3.1.a.(2)(c)1.; AR0186. An exception to the prohibition may be granted, upon a case-by-case analysis, where "Stripes readers cannot readily obtain" free access to commercial media services or sources. *Id.* § 3.1.a.(2)(c)2.; AR0186.

DoWI 5122.11 reiterates that Stripes is a government publication, specifically that it will continue to "operate as a nonappropriated fund instrumentality (NAFI)" in accordance with Department regulations and that Stripes will continue to "partially fund[] its mission in support of DoW through revenue-generating activities as a NAFI, a government entity that provides or assists the Secretaries of the Military Departments in providing programs for DoW personnel." *Id.* §§ 1.2.a. & 3.1.c.(3); AR0182 & AR0188.

## LEGAL STANDARD

"In the context of an APA challenge, summary judgment 'serves as a mechanism for deciding, as a matter of law, whether the administrative record supports the agency action and whether the agency action is consistent with the APA standard of review.'" *League of Women Voters v. DHS*, 835 F. Supp. 3d 79, 105 (D.D.C. 2026) (quoting *Int'l Swaps & Derivatives Ass'n v. CFTC*, 887 F. Supp. 2d 259, 266 (D.D.C. 2012)). In reviewing agency action under the arbitrary-or-capricious standard, 5 U.S.C. § 706(2)(A), the court may not "substitute its judgment for that

of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but must uphold the agency's action if it is "rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (citations omitted).

## ARGUMENT

### I. Plaintiffs Lack Article III Standing

At the outset, the Court lacks jurisdiction. Article III limits this Court's jurisdiction to certain specified "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. A plaintiff's "sincere legal, moral, ideological, and policy objections to" a government policy "do not establish a justiciable care or controversy in federal court." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024). Rather, "to establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). At summary judgment, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" showing that it has standing. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)). Plaintiffs fail to carry that burden here.

#### A. Plaintiffs do not have standing to challenge alleged censorship of third parties

Plaintiffs lack any cognizable interest as recipients of Stripes' speech. As an initial mater, any First Amendment right that Plaintiffs might have as listeners would be "derivative of the First Amendment rights of the speaker." *Martin v. EPA*, 271 F. Supp. 2d 38, 47 (D.D.C. 2002) (citation

omitted); s*ee also Libertarian Nat'l Comm., Inc. v. FEC*, 924 F.3d 533, 559-60 (D.C. Cir. 2019) (en banc) (Katsas, J., concurring in part) (explaining that the First Amendment rights of speakers and listeners are "reciprocal") (quoting *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976)). As explained below, Stripes' product is government speech not subject to the First Amendment. *See infra*, pp. 15-17. Plaintiffs therefore lack any reciprocal rights as listeners.

But even assuming Stripes is distinct from the government itself, Plaintiffs do not gain "the right to sue over *someone else's* censorship" merely because they "claim an interest in that person's speech." *Murthy*, 603 U.S. at 75 (emphasis in original). Rejecting that "'boundless theory of standing,'" *Murthy* forecloses a "right to listen" theory of standing unless the plaintiff demonstrates a "concrete, specific connection to the speaker." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013) and citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)).

Plaintiffs lack that connection. They contend they "have read and relied on Stripes for years." ECF No. 22-1 at 19. If that were enough, anyone who subscribes to a publication would have standing to challenge censorship of that publication. The "right to listen," then, would, *contra Murthy*, be "boundless" and "startlingly broad." *Murthy*, 603 U.S. at 75. *Murthy* itself denied standing to plaintiffs who alleged they were regular consumers of social-media content. *Id.* That Plaintiffs are regular consumers of Stripes is thus not enough.

Nor do Plaintiffs "point to any specific instance of content moderation that caused them identifiable harm" or "identif[y] any specific speakers or topics that they have been unable to hear or follow." *Id.* Plaintiffs concede that they have been able to access material formerly carried by Stripes from other sources. If reprints were not accessible from other sources, it is possible that Stripes would continue to carry them. *See* DoWI 5122.11 § 3.1.a.(2)(c)2. ("The ATSW(PA) may approve exceptions to this prohibition on a case-by-case basis. Exceptions may be granted if data

demonstrates that Stripes readers cannot readily obtain the content (particularly if it is not available for free), and that providing the content advances Stripes' role in maintaining the overseas military community's connection to American society"); AR0186. And, while Plaintiffs fear they will be denied the ability to read material DoW deems inconsistent with "readiness and safety," they point to no actual instances of alleged censorship. *See* ECF No. 22-1 at 18-22.

Finally, none of the older, pre-*Murthy* authorities Plaintiffs cite offer them any support. In *Kleindienst*, the Court held that professors established the requisite connection to an allegedly censored speaker because they had invited that speaker to campus. *Kleindienst*, 408 U.S. at 764-65. The Court rejected the notion, however, that anyone "who would wish to meet and speak with" the visiting speaker—including, presumably, would-be attendees who had no role in inviting him—had a First Amendment right to do so. *Id.* at 768-69. In *Lamont v. Postmaster General*, 381 U.S. 301 (1965), the challenged statute directly regulated the recipient of mail by imposing on him "an affirmative obligation" to return a reply card to avoid having mail addressed to him destroyed by the Post Office. *Id.* at 302-03, 307. Here, the challenged agency actions impose no affirmative obligation of any kind on Plaintiffs. And finally, *Virginia State Bd. of Pharm.* concerned the right of persons prescribed drugs to receive information about the price of those drugs. Plaintiffs here, by contrast, have no comparable interest in receiving information that they can obtain from other sources specifically through Stripes.

**B. Plaintiffs do not have standing based on "economic harm"**

Alternatively, Plaintiffs assert two forms of "economic harm." First, they contend they suffer a "textbook overpayment" injury because they "pay the same $49.99 for a publication worth substantially less than the one they bargained for." ECF No. 22-1 at 16. Second, Plaintiffs argue they incur out-of-pocket costs for subscriptions needed to obtain reprints previously available to them through Stripes. *See id.* at 16-17. Neither theory succeeds.

Plaintiffs' "overpayment" theory fails to demonstrate "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. Typically, when a plaintiff asserts an "overpayment" theory of standing, "contract[]" provides the source of the "legally protected interest." *Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 8 (D.D.C. 2015) (Jackson, J.) (alteration and internal quotation marks omitted). But Plaintiffs do not establish that they have a contractual right to receive reprints through their Stripes subscriptions. To the contrary, the agreement that governs Plaintiffs' digital Stripes subscriptions provides that "Stars and Stripes reserves the right to *modify the content*, type, price, and availability of any digital product at any time." *Digital Access Terms of Sale*, § 1.2 (About Digital Products), https://www.stripes.com/help/digital-access-terms-of-sale/ (emphasis added). Plaintiffs' supposed "legally protected interest" thus has "no foundation" in any source of law. *Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997); *see also Barhoumi v. Obama*, 234 F. Supp. 3d 84, 86 (D.D.C. 2017) (explaining that "an interest is not 'legally protected' or cognizable for the purpose of establishing standing when its asserted legal source . . . does not exist").[2]

Plaintiffs' "out-of-pocket-costs" theory fails to satisfy the causation element. Because Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), they must show that they "incurred certain costs" to avoid an injury that would have established standing in its own right. *Id.* Here, Plaintiffs argue only that they incurred the costs of other subscriptions to avoid the injuries that they assert in their

[2] In any event, any breach of contract would give rise at most to a suit for money damages under the Tucker Act, 28 U.S.C. § 1491, or Little Tucker Act, 28 U.S.C. § 1346. Neither statute authorizes the relief Plaintiffs seek here: an order compelling performance with the alleged contractual term. *McLarnon v. United States*, 154 Fed. Cl. 459, 461-62 n.2 (2021) (collecting cases for the proposition that "specific performance is not an available remedy" for contract claims against the United States under the Tucker Act); *Richardson v. Morris*, 409 U.S. 464, 465–66 (1973) (per curiam) (affirming same principle under the Little Tucker Act).

right-to-listen and overpayment theories. But for reasons explained above, those theories do not supply Plaintiffs with the would-be injury-in-fact that their out-of-pocket-costs theory requires.

## II. Plaintiffs' Substantive Challenges Fail

The lack of jurisdiction aside, Plaintiffs' claims fail on the merits. Contrary to Plaintiffs' contentions, DoW's changes to the rules governing Stripes—effected through the Rule Removal, the Modernization Memo, and ultimately the revised DoWI 5122.11 (together the "Challenged Policies")—were neither arbitrary and capricious nor violative of the First Amendment.

### A. The rules governing Stripes are "committed to agency discretion by law"

Plaintiffs' arbitrary-and-capricious claims fail because the APA does not authorize this Court to review the substance of the changes to Stripes under that standard. The APA precludes judicial review "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under this exception, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see also Volpe*, 401 U.S. at 410. That exception applies here.

No statute directly creates Stripes. Rather, the publication operates as a "nonappropriated fund instrumentality" governed entirely by DoW regulations. *See* DoWI 5122.11 § 1.2.a.; AR0182. And the only potentially relevant statutory provisions governing DoW's regulatory authority are framed in exceptionally broad terms, that supply no meaningful standard against which to judge DoW's exercise of discretion over Stripes. *See* 10 U.S.C. § 136(b) (authorizing the Under Secretary of Defense for Personnel and Readiness to "perform such duties and exercise such powers as the Secretary of Defense may prescribe in the area[] of . . . nonappropriated fund activities"); 5 U.S.C. § 301 ("The head of an Executive department or military department may

prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business . . . .").

The governance of Stripes, then, is as committed to agency discretion as was the program at issue in *Lincoln v. Vigil*, 508 U.S. 182 (1993). There, the Court held that the APA did not authorize review of the Indian Health Service's termination of the Indian Children Program, which the agency had established on its own accord by allocating funds from its lump-sum appropriation. *Lincoln*, 508 U.S. at 184-86. Absent "restrictions in the operative statutes," the agency's "allocat[ion] [of] funds from a lump-sum appropriation to meet permissible statutory objectives" was committed to agency discretion and thus unreviewable. *Id.* at 193. So, too, here. Congress has not earmarked any funds for Stripes. Nor has it required DoW to maintain Stripes *at all*. Still less has Congress established a standard by which to review DoW's changes to this entirely discretionary program.

**B. DoW's actions were not arbitrary or capricious**

Assuming arguendo the Challenged Policies are reviewable, they are neither arbitrary nor capricious. In the Rule Removal, the agency removed part 246 from the C.F.R. "because it address[ed] internal policy, responsibilities, and procedures for Stripes." Rule Removal, 91 Fed. Reg. at 1706; AR0167. The Department explained that the "internal policy and procedures governing Stripes will continue to be published in DoD Directive 5122.11." *Id.* Through the Modernization Memo, DoW then directed that DoD Directive 5122.11 be "update[d]" and "reissued" to "modernize Stripes' operations to better serve the U.S. military community." Modernization Memo, ECF No. 1-1 at 1; AR0172. It explained that "Stripes must modernize to remain relevant and viable in a digital age," and it adopted an interim policy to govern while DoW developed a revised final policy. *Id.* Finally, in DoWI 5122.11, DoW adopted a modified policy that serves its modernization efforts. DoWI 5122.11, AR0180-96.

That revised policy maintains Stripes as "an independent source of news and information," intended to "bolster morale, readiness, and awareness of military-relevant issues while facilitating the exercise of citizenship rights." DoWI 5122.11 at 1; AR0180. To that end, the policy declares that Stripes will "publish accurate, fair, impartial, and credible news and information," while "prioritz[ing] content not readily available via commercial news media." *Id.* § 1.2.b.; AR0182. It will also "maintain editorial operations independent of the military chain of command, military public affairs activities, or other external influences, free from censorship or propaganda," subject only to the limitation that "Stripes must safeguard information by preventing the disclosure of classified information and controlled unclassified information, and by avoiding the publication of material that would adversely affect national security or clearly endanger U.S. personnel . . ." *Id.* § 1.2.c.; AR0182.

**1.** Plaintiffs' primary contention is that DoW violated the change-in-position doctrine. Agencies "'are free to change their existing policies as long as they provide a reasoned explanation for the change,' 'display awareness that [they are] changing position,' and consider 'serious reliance interests.'" *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016)). In changing course, an agency is not "subjected to more searching review" under the APA. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). Instead, "[t]he change-in-position doctrine asks two questions." *Wages & White Lion*, 604 U.S. at 569. "The first is whether an agency changed existing policy." *Id.* If yes, the second question is whether "the agency 'display[ed] awareness that it *is* changing position' and offer[ed] 'good reasons for the new policy.'" *Id.* at 570 (quoting *Fox Television*, 566 U.S. at 515).

Citing an April 11, 2025 "Action Memo," Plaintiffs contend that DoW violated the change-in-position by subsequently opting for repeal of part 246 rather than modification. *See* ECF No.

22-1 at 29; AR0154. But the Action Memo does not resemble the kind of "formal setting" which courts have "traditionally" found to embody agency positions. *Wages & White Lion*, 604 U.S. at 569 n.5. Indeed, the *Wages* Court expressed doubt that a formal agency position could be derived from a "nonbinding guidance document," *id.*, even though such documents are public facing. Plaintiffs cite no precedent for applying the change-in-position doctrine to an alleged position set forth in non-binding *and non-public* internal memoranda.

Even if the Action Memo established a prior agency position from which DoW later departed, DoW explained the supposed change, as outlined above. DoW issued the Rule Removal so that changes to Stripes' governance could more efficiently take place through the modification of internal documents (i.e., DoDD 5122.11) rather than by notice-and-comment rulemaking. As explained below, DoW was permitted to make those changes without notice-and-comment rulemaking for addressing "internal policy, responsibilities, and procedures for Stripes." Rule Removal, 91 Fed. Reg. at 1706; AR0167; *see infra* pp. 18-21. DoW also explained the substantive decision to modernize Stripes through the interim policy through the Modernization Memo. ECF No. 1-1 at 1, 3; AR0172, AR0174 (asserting need to "modernize Stripes' operations to better serve the U.S. military community" and that "Stripes must modernize to remain relevant and viable in a digital age."). DoW then implemented that interim guidance in the final policy in DoWI 5122.11, by, among other things, directing that Stripes' operations be revamped to provide a "'hometown-style' publication" that prioritizes "original news stories developed through first-hand reporting by Stripes staff" including through "digital formats that are easily accessed by the reader" and by prohibiting the expenditure of resources on "purchasing or contracting for news stories . . . from commercial news media services or sources." DoWI 5122.11 § 3.1(a); AR0186.

Plaintiffs may disagree with the Department's modernization policy or with the specific means the Department chooses to advance that policy objective, such as by prohibiting the

purchasing of or contracting for news material from wire or commercial services. But disagreement does not mean that the Department's policy is arbitrary or capricious.

Plaintiffs argue that the Rule Removal is not "rational" because it erodes "protections against censorship," *see* ECF No. 22-1 at 30, but nothing in the Final Rule, Modernization Memo, or DoWI 5122.11 justifies those fears, as the modernization efforts reaffirm the Department's commitment that Stripes be "an independent source of news and information." DoWI 5122.11 at 1; AR0180. *See also id.* at § 1.2.c. ("Stripes will maintain editorial operations independent of the military chain of command . . ."), § 2.2.b. and e. (asserting that the Director, War Media Activity's administrative support functions "must be conducted in a manner that preserves editorial independence and prevents news management or censorship" and "[s]afeguards Stripes' editorial independence"), § 3.1.a.(2)(d) (noting that any republished "official DoW public affairs content" be "clearly labeled as such" to protect Stripes' "editorial independence"), § 3.1.d.(2) ("Stripes will operate with editorial independence, which protects content decisions from command influence . . ."), § 3.3.c.(2) (clarifying that Stripes' Ombudsman's "report or other document" to Congress "will not be changed without the Ombudsman's concurrence" and that any "addendum added by DoW officials" will be "clearly delineated from the Ombudsman's document"); AR0182-90. Plaintiffs may prefer that policies protecting Stripes' independence and freedom from censorship be published in the Federal Register (and any modifications be subject to notice-and-comment rulemaking) but the Department's choice in promulgating those protections within internal DoW policy documents is not irrational.

**2.** Separately, Plaintiffs contend that DoW changed its position on whether notice-and-comment is required. *See* ECF No. 22-1 at 29-30. But whether agency action constitutes a "legislative rule" subject to notice-and-comment procedures is a question of law determined by this court de novo. *Nebraska, Dept. of Health & Human Servs. v. HHS*, 340 F. Supp. 2d 1, 12

(D.D.C. 2004). It is not subject to the change-in-position doctrine, which is an outgrowth of arbitrary-and-capricious review.

In any event, it is far from clear that DoW previously regarded its policy as a legislative rule. Although the agency solicited comment on the proposed rule that became part 246 in 1993, the agency adopted DoDD 5122.11 as the governing policy for Stripes without notice and comment on October 5, 1993. *See* DoDD 5122.11 at 1; AR0005. Indeed, when DoW finalized part 246 on April 22, 1994, it adopted October 5, 1993 as the effective date, AR0032, thereby indicating its view that its policy had already been in effect without completion of the notice-and-comment procedure.

**3.** Plaintiffs also fault DoW for failing to consider reliance interests. But "the extent to which an agency is obliged to address reliance" turns on whether reliance interests were "raised before it." *Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 722 (D.C. Cir. 2016) (alterations and citation omitted). Contrary to their assertion, the record contains no evidence of reliance. *See* ECF No. 22-1 at 30-31. Plaintiffs point to statements (1) that a proposed rule DoW did not adopt "has been used to affirm the editorial independence of [Stripes] and the Ombudsman position and purpose," AR0156, (2) that the ombudsman "has an independent duty to inform Congress about matter regarding the state of the free flow of information to the U.S. military via Stripes," AR0156-57, and (3) that Stripes "non-concurred" with an earlier proposal to "remove[] the existing Stripes' governance from the CFR and issu[e] new regulatory governance only as a DoD Instruction." *Id.* But none of these statements say anything about reliance. Moreover, Plaintiffs cannot rely on their own declarations to establish the merits of their APA claim. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("courts are to decide, *on the basis of the record the agency provides*, whether the action passes muster under the appropriate APA standard of review.") (emphasis added).

Even now, Plaintiffs refer only vaguely to unspecified reliance "on the regulations' guarantee of news 'without news management or censorship.'" ECF No. 22-1 at 30 (citation omitted). But it is not clear how Plaintiffs relied on this alleged "guarantee" to their detriment. To constitute a "valid basis on which to undo agency action," reliance interest must be "specifically identified, reasonably incurred, and causally tied" to the challenged action. *Solenex LLC v. Bernhardt*, 962 F.3d 520, 529 (D.C. Cir. 2020). Plaintiffs' "generalized" reference to "unidentified and unproven reliance interests" is insufficient. *Id.*

**C. DoWI 5122.11 does not violate the First Amendment**

Plaintiffs' contention that DoWI 5122.11 violates the First Amendment, ECF No. 22-1 at 39-44, is wrong. "When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009)). Stripes is a government publication, and its journalists are government employees speaking pursuant to their public employment. *Slavin v. Parnell*, 2026 WL 2620990 at *1 (D.D.C. Sept. 4, 2026) (noting that Stripes is "funded by the Department of Defense" and its employees are "paid by non-appropriated funds, through the Department of Defense.") (citation modified); *see also* DoWI 5122.11 § 1.2.a. ("Stripes will operate as a nonappropriated fund instrumentality (NAFI) in accordance with" Department regulations); AR0182; DoWI 5122.11 § 3.1.c.(3) ("Stripes partially funds its mission in support of DoW through revenue-generating activities as a NAFI, a government entity that provides or assists the Secretaries of the Military Departments in providing programs for DoW personnel."); AR0188.

Plaintiffs argue that Stripes is not government speech because its internal governance policies establish it as "independent." ECF No. 22-1 at 41. But that is irrelevant. If a private publication announces a policy of publishing any speech protected by the First Amendment, that

does not make the private publication's editorial decisions subject to First Amendment scrutiny. The government is likewise permitted, *as a matter of regulatory policy*, to afford the employees of its own publication a degree of editorial independence. That does not mean that, *as a constitutional matter*, the publication ceases to be government speech.[3]

That Stripes is government speech is clear from the previous policy that Plaintiffs favor (*see* Proposed Order, ECF No. 22-2 at 2), which likely would have been unconstitutional had Stripes been private speech. For instance, that previous policy prohibited Stripes from subscribing to a service "whose primary purpose is the advertisement or promotion of commercial products, commodities, or services." DoDD 5122.11, Enclosure 4, § E4.4.7.2; AR0021. Likewise, the previous policy prescribed that the editorial practices of Stripes "shall be in accordance with journalistic standards governing U.S. daily commercial newspapers of the highest quality, with emphasis on matters of interest to the STARS AND STRIPES readership." DoDD 5122.11 § 4.2.; AR0006. Had the government attempted to impose such restrictions on a private publication, it would likely have been an impermissible content-based or viewpoint-based restriction.

Nor do cases like *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), *Walker*, or *Pleasant Grove City*, hold otherwise. Those cases supply the test for government speech when "government invites the people to participate in a program" airing speech. *Shurtleff*, 596 U.S. at 252. In those cases, "[t]he boundary between government speech and private expression can blur," and so the Court looks at "context" to determine "whether the government intends to speak for itself." *Id.* Here, there is no such blurring—Stripes is a government publication, its journalists and editors are

[3] In *Tripp v. DoD*, 284 F. Supp. 2d 50 (D.D.C. 2003), another judge of this Court acknowledged that Stripes "is owned and controlled by [DoW]." *Id.* at 57. While the Court found that a Stripes' reporter could claim the "reporter's privilege" based on the First Amendment, *id.* at 62, it did not address the precise question here: whether the First Amendment prohibits DoW itself from regulating the publication it owns and controls.

government employees, and decisions about what to write and publish are made pursuant to their government employment.

But even if Stripes is not government speech, DoW's policies do not violate the First Amendment. Plaintiffs argue that DoWI 5122.11 "imposes content- and viewpoint-based restrictions." ECF No. 22-1 at 41. But Plaintiffs' arguments are wrong. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted). "Viewpoint discrimination is . . . an egregious form of content discrimination . . . [where] the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819, 829 (1995) (citations omitted). Thus, the prohibition on the publication of wire-service or other media reprints is hardly content-based discrimination as the government is not prohibiting specific topics or subjects (e.g., political reporting, sports reporting, etc.) from publication. It is certainly not viewpoint-based discrimination, because the government has not targeted specific viewpoints (e.g., coverage that criticizes or embarrasses the military). On the contrary, Stripes has been granted independence to carry out its own reporting free from command influence. *See supra*, p. 13 (quoting DoWI 5122.11 at 1, §§ 1.2, 2.2, 3.1, and 3.3; AR0180-90). At most, a prohibition on purchasing or contracting for wire service or commercial media products would be a content-neutral regulation that simply regulates the manner of expression of Stripes' content.

Plaintiffs also assert that DoWI 5122.11 chills speech and constitutes a prior restraint. *See* ECF No. 22-1 at 43-44. But Plaintiffs' bare references to a handful of tweets or to DoWI 5122.11's directive that Stripes' content support military good order and discipline are woefully inadequate. Nothing in Plaintiffs' amended or supplemental complaints plausibly pleads a connection between a desire to refocus from "woke distractions" and DoWI 5122.11's mandates. Nor is it the case that

Stripes or its military personnel have ever enjoyed some immunity from adherence to the Uniform Code of Military Justice in their duties under the previous DoDD 5122.11. The requirement that Stripes' content support good order and discipline is not new but merely spells out part of the ordinary obligations that previously governed Stripes and its military employees. *See, e.g.*, DoDD 5122.11 at § 4.4.1. (requiring Stripes personnel to operate in accordance with "Federal laws and DoD Directives that affect all DoD employees" and the Manual for Courts-Martial "for S&S military personnel on active duty"); AR0007.

**III. Plaintiffs' Notice-And-Comment Claims Fail**

Shifting from substance to procedure, the Court should also reject Plaintiffs' contention that DoW violated the APA's requirement that certain rules go through notice and comment. "Not all 'rules' must be issued through the notice-and-comment process." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015). For starters, "[th]e notice-and-comment requirements apply . . . only to so-called 'legislative' or 'substantive' rules; they do not apply to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'" *Lincoln*, 508 U.S. at 196 (quoting 5 U.S.C. § 553(b)); *accord Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014).

The Rule Removal and DoWI 5122.11 are not subject to notice and comment because they are "rules of agency organization, procedure, or practice[.]" 5 U.S.C. § 553(b)(4)(A). Such rules (also called "procedural rules") "do[] 'not impose new substantive burdens." *Elec. Priv. Info. Ctr. v. DHS*, 653 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 169 (D.C. Cir. 1997)). While a procedural rule may have "a 'substantial impact' upon the persons subject to it," *Elec. Priv. Info. Ctr.*, 653 F.3d at 5 (quoting *Pub. Citizen v. Dept. of State*, 276 F.3d 634, 640-41 (D.C. Cir. 2002)), it differs from a legislative rule in that it "does not itself 'alter the rights or interest of parties.'" *Chamber of Commerce of U.S. v. DOL*, 174 F.3d 206, 211

(D.C. Cir. 1999) (quoting *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980)). Elements of the Rule Removal and DoWI 5122.11 are also "general statements of policy," which the Supreme Court has defined as "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln*, 508 U.S. at 197 (internal quotations and citations omitted).

Prior to its repeal, 32 C.F.R. part 246 did not impose any substantive burdens on Plaintiffs or other members of the public. Rather, its purpose was to "[e]stablish[] policy, assign[] responsibilities, and prescribe[] procedures" for DoW's management of Stripes; "[s]upersede[]" a previous set of "policies and procedures" about Stripes; "[a]uthorize[] the establishment, management, operation, and oversight" of Stripes; "[d]esignate[] the Secretary of the Army as the DoD Executive Agent for providing administrative and logistical support to" Stripes; and "[a]uthorize[]" designated military commanders "to establish and maintain" a board of directors for Stripes. 32 C.F.R. part 246.1 (2025). In repealing part 246, DoW explained that notice and comment were not required because part 246 "addresse[d] internal agency policies and procedures and its removal has no impact on the public." Rule Removal, Section III, 91 Fed. Reg. 1706, 1706 (Jan. 15, 2026); AR0167. And similar to the old part 246, the new DoWI 5122.11 "[e]stablishes policy, assigns responsibilities, and prescribes procedures" and "[e]stablishes" a group to "advise Stripes on business and personnel operations." DoWI 5122.11 at 1; AR0180.

Plaintiffs argue that the rules governing Stripes must be legislative rules because they "encode a considered value judgment" about Stripes' "editorial independence." *See* ECF No. 22-1 at 25-26. That value judgment, however, is about "agency organization, procedure, or practice," rather than about substantive rules that bind the public. 5 U.S.C. § 553(b)(A). Nor does the claim that the rule changes "alter the interests of parties outside the agency" help Plaintiffs here. *See* ECF No. 22-1 at 25. Even "a rule with a 'substantial impact' upon the persons subject to it" may

be a procedural rule. *Elec. Priv. Info. Ctr.*, 653 F.3d at 5 (quoting *Pub. Citizen v. Dept. of State*, 276 F.3d 634, 640-41 (D.C. Cir. 2002)). "[P]rocedure impacts on outcomes and thus can virtually always be described as affecting substance, but to pursue that line of analysis results in the obliteration of the distinction that Congress demanded." *JEM Broadcasting Co., Inc. v. FCC*, 22 F.3d 320, 326-27 (D.C. Cir. 1994) (quoting *Air Transport Ass'n of Am. v. Dept. of Transp.*, 900 F.2d 369, 383 (D.C. Cir. 1990) (Silberman, J., dissenting)).

Plaintiffs point to six "regulations" in DoDD 5122.11 (and published in 32 C.F.R. part 246) did as examples of "legislative rules" that they purport could only be rescinded through notice-and-comment. *See* ECF No. 22-1 at 24-25 (quoting 32 C.F.R. § 246.4(b) (2025) ("requiring a 'free flow of news and information . . . without news management or censorship'"); § 246.4(f)(2) & Appendix D (requiring Stripes to carry commercial news and opinion in addition to staff-generated content); § 246.3(f) (requiring a civilian senior editor); § 246.4(e)(1) (limiting when military officials could stop Stripes from publishing); § 246.5(e)(9) (barring military officials from advisory board); and § 246.3(d) (ombudsman position)). But each of these six examples comfortably fits either as procedural rules or as a "general statement[] of policy" "issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power," namely the Department's discretionary control over Stripes. *See Lincoln*, 508 U.S. at 197 (quotations and citations omitted). None of the provisions cited are proper legislative rules, such as, for example, an agency determination of the minimum size of Atlantic Cod that can be fished in the Gulf of Maine (*see, e.g.*, 91 Fed. Reg. 39,529 (June 30, 2026)).

Moreover, Plaintiffs contend that notice and comment was required for the Rule Removal because the 1994 final rule went through notice-and-comment. *See* ECF No. 22-1 at 25 (citing *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1205 (D.C. Cir. 2020)). As explained above, it is not clear that the underlying premise about the 1994 rule is correct. *See supra*, p. 14. But in

any event, *Bernhardt* simply reflects that a rule repealing a legislative rule ordinarily will also be a legislative rule. It does not require an agency to repeal rules for which notice-and-comment "is not required," *Perez*, 575 U.S. at 101, simply because the agency unnecessarily utilized those procedures previously.

Finally, the DoWI 5122.11 is independently exempt from notice-and-comment rulemaking because it "relat[es] to agency management or personnel." 5 U.S.C. § 553(a)(2). *See, e.g., Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 840 (D.C. Cir. 2024) (noting that rulemaking pertaining to the "internal management" of the Library of Congress is "generally exempt from the APA's procedural requirements for informal making", citing 5 U.S.C. § 553(a)(2)); *Harmon v. Thornburgh*, 878 F.2d 484, 494 n.19 (D.C. Cir. 1989) (holding that Department of Justice drug-testing programs for DOJ workers "appear to be paradigmatic examples of "matter[s] relating to agency management or personnel" under § 553(a)(2)); *Brodowy v. United States*, 482 F.3d 1370, 1375 (Fed. Cir. 2007) (noting that agency's adoption of "GS pay system" was "'a matter relating to agency management or personnel'" where "formal rulemaking was not required.") (quoting 5 U.S.C. § 553(a)(2)).

Since DoWI 5122.11 relates to policies governing Stripes (DoWI 5122.11 § 1.2), the responsibilities of various DoW and Stripes officials and employees (§ 2), and Stripes' procedures and operations (§ 3), DoWI 5122.11 "appear[s] to be a paradigmatic example[] of 'matters relating to agency management or personnel'" under § 553(a)(2). *See Harmon*, 878 F.2d at 494 n.19. It is therefore independently exempt from the strictures of notice-and-comment rulemaking.

## IV. Any Relief Should be Limited to Remand to the Department (and not Vacatur)

If the Court nevertheless grants summary judgment to Plaintiffs, it should limit its relief to remand without vacatur. Although the Government recognizes that the D.C. Circuit treats vacatur as the default remedy in APA cases (*see, e.g., Harmon*, 878 F.2d at 494), the APA "does not say

anything about 'vacating' agency action ('wholesale' or otherwise)." *United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring). Rather, in 5 U.S.C. § 703, the APA looks to pre-existing remedies available in the "form[s] of legal action" known at the time of the APA's enactment. *See, e.g.*, Administrative Procedure Act, S. Doc. No. 248 at 8, 79th Cong., 2d Sess. 36-37 (1946); 92 Cong. Rec. 2159 (1946) (referring to Section 703 as governing remedies); S. Rep. No. 752, at 44, 79th Cong., 1st Sess. 44 (1945) (explaining that the APA "declares the existing law concerning the scope of judicial review"). Defendants not aware of any pre-APA historical tradition of equitable actions for vacatur of rules.

Even if vacating a rule is an available remedy under the APA, the Court should exercise its "discretion to leave agency action in place while the decision is remanded for further explanation." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 985 F.3d 1032, 1051 (D.C. Cir. 2021) (internal quotation mark and citation omitted). "'The decision whether to vacate depends on the seriousness of the order's deficiencies'" and "'the disruptive consequences of an interim change that may itself be changed.'" *Id.*, quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). First, the "'seriousness' of a deficiency . . . is determined at least in part by whether there is 'a significant possibility that the [agency] may find an adequate explanation for its actions' on remand." *Id.* at 1051 (quoting *Williston Basin Interstate Pipeline Co. v. FERC*, 519 F.3d 497, 504 (D.C. Cir. 2008)).

Should the Court issue any relief in this case, it should remand the Challenges Policies to the Department for further explanation and reasoned rulemaking, rather than vacatur. Doing so would allow the Department to expeditiously cure any procedural or substantive deficiency outlined by the Court and would avoid disruption in Stripes' governance while such work takes place.

Separately, Plaintiffs' requested relief that Defendants file a "status report" "within 24

hours" of any Court order is unduly burdensome and unjustified. ECF No. 22-2 at 2.

## CONCLUSION

For the reasons above, Plaintiffs' motion for summary judgment should be denied and Defendants' motion for summary judgment should be granted in all respects.

Dated: September 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

NOAH T. KATZEN
*Assistant Branch Director*

/s/ *Esam K. Al-Shareffi*
ESAM K. AL-SHAREFFI
D.C. Bar No. 90010174
*Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 598-7367
E-mail: esam.k.al-shareffi@usdoj.gov

*Counsel for Defendants*